STATE OF NEW HAMPSHIRE

CARROLL, SS.             SUPERIOR COURT

212-2019-CV-00002

Kathleen Fraize
4 Burnt Meadow Road
Brownfield, ME 04101

v.

School Administrative Unit (SAU) 9
176A Main Street
Conway NH 03818

And

Conway School District
c/o SAU 9
176A Main Street
Conway, NH 03818

**COMPLAINT**

**INTRODUCTION**

**PLAINTIFF REQUESTS A TRIAL BY JURY**

1. Plaintiff, Kathleen Fraize, (hereinafter "Ms. Fraize" or "Plaintiff") brings suit against the Defendants the Conway School District and SAU 9, alleging that they violated the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C., and collectively referred to herein as the "ADA"), New Hampshire RSA 354-A, *et seq.* for disability discrimination based on harassment/hostile environment, and for termination; and for violation of RSA 98-E, et. seq., Freedom of Expression, and Wrongful Discharge.

## PARTIES

2.     The Plaintiff, Ms. Fraize, is a resident of Brownfield, ME, with an address of 4 Burnt Meadow Road, Brownfield, ME 04101, who was employed by Defendants.

3.     Defendant SAU 9 (hereinafter "SAU", or collectively with Defendant CSD as "Defendant") has a principal mailing address of 176A Main Street, Conway, NH 03818. The Superintendent of SAU 9 is currently Kevin Richard, c/o SAU 9, 176A Main Street, Conway, NH 03818; the Director of Business & Finance is Becky Jefferson, c/o SAU 9, 176A Main Street, Conway, NH 03818; and the Chairperson of the SAU School Board is Nancy Kelemen, c/o SAU 9, 176A Main Street, Conway, NH 03818.

4.     The Conway School District (hereinafter "CSD", or collectively with Defendant SAU as "Defendant") is one of three school districts that make up the New Hampshire School Administrative Unit 9.  CSD consists of seven schools, including the Kennett High School, at which Ms. Fraize worked.  CSD has an address of 409 Eagles Way, North Conway, NH 03860. Neal Moylan is the Principal of the Kennett High School, with an address of c/o Kennett High School, 409 Eagles Way, North Conway, NH 03860.  Joe Lentini is the Conway School Board Chairperson, with an address of c/o SAU 9, 176A Main Street, Conway, NH 03818; and Michelle Capozzoli, is the Conway School Board Vice-Chairperson, with an address of c/o SAU 9, 176A Main Street, Conway, NH 03818.

5.     At all relevant times, SAU/CSD (Defendants) have each continuously had at least fifteen (15) employees.

## JURISDICTION AND VENUE

6.  Jurisdiction and venue are proper as employment practices alleged to be unlawful were committed in Carroll County, State of New Hampshire, and Defendants are residents of Carroll County.

7.  Ms. Fraize filed a timely Charge of Discrimination with the New Hampshire Commission for Human Rights (NHCHR) on or about November 10, 2016.  The Charge was withdrawn, and Ms. Fraize brings this action within ninety (90) days of the receipt of Notice of Right to Sue.

## STATEMENT OF FACTS

8.  Ms. Fraize was employed by SAU 9, at the Kennett High School, in the Town of North Conway, for approximately 6 years, starting on or about August 2010.

9.  At various times, Ms. Fraize was certified in special education, behavioral programs, and had a bachelors in K-12 art, had a masters as an inclusion specialist, and was certified in elementary grades K – 8.

10.  Ms.  Fraize was and is a qualified person with a disability, regarded as having a disability, and/or had a record of having a disability.  Ms. Fraize also suffered from some short-term medical conditions.

11.  Ms. Fraize suffered from ADHD, which she was very open about, and also started suffering from anxiety and high blood pressure as a result of the harassment from Defendants.

12.  Ms. Fraize was originally hired by Defendant in August 2010 as a Special Educator, and performed her duties well at all times, without reasonable accommodation.  In

fact, in February 2016 Ms. Fraize was nominated for a New Hampshire Teacher of the Year award, as well as a Teacher of the Month award at one point.

13.     Ms. Fraize's job was the head teacher of the S.T.A.R. (hereinafter "STAR") behavior program (Striving Toward Academic Responsibility), which generally involves children who have various emotional and/or behavioral problems that interfere with their education in a standard classroom environment.  In this setting these students are in a less restrictive environment with alternative support.  STAR is an alternative placement for students, some of whom may otherwise be placed out of district or could eventually be directed to the school's Eagle Academy program.

14.     As part of her job, Ms. Fraize met with her direct supervisor, Monahan (Special Education Coordinator for the high school), almost every day after school to touch base regarding the students on Ms. Fraize's caseload, as Monahan liked to know what was happening.

15.     Ms. Cox ran the Eagle program.  From nearly the beginning, as Ms. Fraize was beginning to have success with the students, Ms. Cox began threatening to terminate Ms. Fraize. The more successful Ms. Fraize was, the fewer students there would be for the Eagle program, and presumably there would be less funding from the State.

16.     Defendant boasted a "zero" dropout rate, but that was because they forced students and parents into "home schooling", even in some cases where the parents were special needs, and could not do home schooling, causing the children to not be receiving their guaranteed education.  In addition, to the extent they could get students transferred to the "Eagle" program, if they dropped out from there, it is believed it did not count against the district's dropout rate.

4

17. The Defendant did things to sabotage students' progress in her program, sometimes violating their right to an education, such as not allowing her to follow her written plan, not allowing students to make up classes at time, students were pumped for negative information about Ms. Fraize in an inappropriate manner,

18. Several times Ms. Cox stated to Ms. Fraize that she had the power to terminate Ms. Fraize because she was an administrator.

19. The harassment by Cox included, but was not limited to, repeatedly threatening to terminate Ms. Fraize, interfering with her work with students, recommending to her students that they drop out, asking them to come to her (Cox) instead of Fraize, lying to Fraize's bosses about various circumstances including that students had complained about certain things,

20. Ms. Cox has encouraged and instructed colleagues of Ms. Fraize's, non-tenured subordinates to her, to complain about Ms. Fraize to other administrators. In one instance the staff included the reference in the letter that she was instructed to write to Mr. Moylan. Ms. Fraize was called into his office, and when it did not make sense and was confusing, when she asked for clarification Ms. Cox's name came up. Ms. Fraize then explained to Mr. Moylan that she was being harassed by Ms. Cox.

21. On one occasion Cox met with Ms. Fraize and told her a student should be receiving certain services and it was Ms. Fraize's job to make it happen. Ms. Fraize informed her that that was up to the team as to whether the IEP would be changed, and it was not in Ms. Fraize's power to make changes that would cost the district money. This was very inappropriate as Ms. Cox was not even in Ms. Fraize's department.

22. In addition, this meeting about the IEP was not properly noticed and did not contain all of the necessary parties under state and/or federal law. In fact, if the student was not

part of Eagle Academy, Cox would be violating Confidential Ethical practices set by the state/federal laws, unless she had parental permission to read and/or have the records.

23. Ms. Cox then informed Ms. Fraize that she would be keeping an eye on this situation and would be checking this student's IEP, stating emphatically that, "if she found one thing out of line, she could have me terminated immediately, and she added that as an administrator she had the authority." Ms. Fraize reported these incidents to her supervisor, but nothing was apparently done.

24. On another occasion Ms. Cox inappropriately interfered when Ms. Fraize was following protocol for a student who indicated self-harm, by inserting herself where she was not supposed to, and then not following protocol, which could be a danger to the student. In fact, Ms. Cox manipulated the student during the crisis, tried to pump her that she did not like Ms. Fraize, and discussed the STAR program. Apparently, Ms. Cox was soliciting students for the Eagle Program.

25. Furthermore, Ms. Cox promised transportation for the student to the program, but later revoked it for reasons that are despicable.

26. Ms. Cox interrogated other of Ms. Fraize's students when they were in crises, which interfered with their plans, and when Ms. Cox was not the administrator in charge of the situation. At many times it appeared Ms. Cox was setting the students up for failure, and Ms. Fraize believes this was to get them into the Eagle program, which Ms. Cox was in charge of.

27. The STAR program was ultimately a feeder to Eagle Academy, although the students were supposed to have been given every opportunity to succeed in the school setting, which Ms. Fraize was facilitating in her role at STAR. If students did not do well at Eagle and

dropped out, they would be funneled to "home-schooling", which if they dropped out from there, would not count against the District's dropout rating.

28.     There are numerous instances of Cox interfering with Ms. Fraize's job, and the education of students whom Ms. Fraize was helping.  Due to confidentiality issues, most of the details cannot be appropriately explained in this complaint but may be further disclosed through discovery.

29.     J. M. also was instrumental in setting children up to fail so that they would end up in the Eagle Program.  She would be in meetings where it was determined that the student will participate in online courses, then sabotaged the process by not signing them up, locking the courses, not unlocking the tests, and/or reassigning the computers. The students subsequently become frustrated with the process and behaviors increased, and they were set up to fail.

30.     Between May and June 2015, the Defendant put Ms. Fraize on a forced paid administrative leave.

31.     During 2015, at least by June, Defendant suggested Ms. Fraize resign, which she rejected.  Thereafter, Defendant placed Ms. Fraize on administrative leave, and told she could not have any contact with students, parents or colleagues. As the school year ended and the summer (2015) began, she made inquiries as to whether she still could not contact those individuals.

32.     As Ms. Fraise was never given direct permission, she was afraid to contact any of them, which prevented her from socializing with colleagues over the summer and kept her from supporting students academically. In essence, they stripped her of her support system and from any social interaction, thereby isolating her, which was very difficult for her.  They were attempting to sever her relationship with students she served in an effort to help them succeed.

7

33. When Ms. Fraize returned in the fall of 2015, one of her rooms had been taken away, which impacted her ability to deal with the students; it had been given to someone there only two days per week, and she was not even allowed to use it the other days he was not there. She had been given a key, but when Ms. Cox found out, she made comments about it and took Ms. Fraize's key to the room away.

34. However, on or about January 2016, instead of just meeting with Monahan, Ms. Fraize was called into a meeting with Pamela Stimpson (Director of Special Education), Monahan, and others. Monahan and Stimpson were supervisors of Ms. Fraize.

35. In that meeting, Ms. Fraize was reprimanded by Stimpson for allegedly (a) walking too briskly in the hall (even though she is supposed to have a quick response time for emergencies and had previously received a letter of recognition from the then Vice Principal Julie King that included accolades for her quick response time, which was followed by an email from the special ed director, Pam Stimpson complimenting her for said recognition), and (b) poor boundaries with parents and students.

36. The section (b) of the reprimand specifically cited Ms. Fraize calling parents in the evening, which is usually when they are home and available. It is important to note here that the principal, Mr. Moylan, had implemented the protocol that all parent calls be returned within 24 hrs., which he repeatedly reiterated. These reprimands were unjustified and constituted harassment.

37. In approximately January 2016, Ms. Fraize was told by Stimpson that she could not meet with Monahan any longer, and that Ms. Fraize should "see a therapist because she was too emotional".

8

38. They told Ms. Fraize that she was having problems handling her job, and she responded that she could easily handle her job, but what was difficult to manage was the abuse from the administration.

39. Ms. Fraize had at least 15 very difficult students and every day there was a possibility of a bad situation that needed to be talked about. In fact, Ms. King (previous vice principal) had told Ms. Fraize that her job had become easier because of Ms. Fraize's communication with her.

40. Ms. Fraize had cried during a few meetings when she felt she was being harassed, and/or in frustration when they were doing what she considered to be mistreating students. Ms. Fraize was one to passionately advocate for students, usually with supporting documentation.

41. At this January 2016 meeting, management provided Ms. Fraize with a flyer for counseling services and she was told by Stimpson that Defendant would pay for her therapy.

42. At said meeting, Stimson asked Ms. Fraise if she was "taking medication for her disability", which was of course intrusive and a private matter.

43. Ms. Fraize was shocked at this comment and recommendation coming from her employer. However, as she had a counselor she occasionally used, in order to cover this base, Ms. Fraize made an appointment with that person who cleared her for work.

44. This question to her obviously indicates Defendant regarded Ms. Fraize as a person with a disability. This questioning created a wedge and isolated Ms. Fraize, as she could no longer discuss her concerns with her direct supervisor due to the inappropriate and invasive questioning, and that she could face further health questions, and it made doing her job harder.

45. In that same January 2016 meeting, Ms. Fraize was asked by Stimson whether or not she could do her job, and they told her they were concerned for her health.

46. On or about in 2016, Ms. Fraize was nominated for Teacher of the Year. Defendant refused to provide Ms. Fraize with a letter of support for Teacher of the Year, allegedly because of the bogus "improvement plan" they had placed her on, and also refused to allow other staff to provide a letter of support.

47. That Ms. Fraize was so successful that she was nominated for teacher of the year is incongruous with the shortcomings alleged by Defendant. In one instance, the Defendant had expressed concern about a lesson plan in social skills, which Ms. Fraize explained to them. The letter concerning same was to be removed from her file after a year, but it was not.

48. On or about March 11, 2016 Ms. Fraize was called into Neal Moylan's office (Principal of the high school), and verbally informed she would not be rehired for the 2016/2017 school year.

49. On March 16, 2016, Mr. Fraize reached out to Janine McLauchlan, who was then the School Board Chairperson, by email to discuss the matter, her concerns for both her position and the students who would be impacted by her termination, and to ask about any appeal process available to her. The same day she received a return email from McLauchlan stating there was no appeal process and suggesting Ms. Fraize make an appointment with the Superintendent.

50. During March 2016 Ms. Fraize missed some time from school due to a temporary medical problem, but only took the time off that she had available to her and had been approved by Kevin Richard (Superintendent of SAU 9).

51. On or about March 2016, management, per Richard, suggested that Ms. Fraize take a leave of absence, but she declined, wanting to remain there for the year to help the students she served. However, the harassment and bullying worsened, including the repeated suggestion that she resign and/or take a leave of absence.

52. On or about March 16, 2016 Superintendent Richard was waiting to meet with Ms. Fraize, and although Ms. Fraize requested that a union representative be present, Richard told her that she did not need one. Mr. Richard informed Ms. Fraize that he was putting her on administrative leave, allegedly because the students needed consistency. Ms. Fraize believes this was harassment based on her perceived disability, and because of the reasons contrary to public policy, that her successes were keeping students from entering the Eagle program, which received special funding.

53. Mr. Richardson also stated to Ms. Fraize in said meeting that he would make sure she never worked again if she took her concerns about it, the hostile work environment, any further. In fact, after her termination, there were several positions she applied for she was certain she had, only to have the offer suddenly retracted. Ms. Fraize believes she was being blackballed by Defendant and if she kept applying for jobs in education her reputation would be destroyed throughout NH and Maine.

54. Ms. Fraize then went out of work on a forced administrative leave of absence/sick leave through the end of the school year and was then terminated.

55. Ms. Fraize wanted to continue working, however on or about April 4, 2016 she was informed Defendant was not renewing her contract as she was allegedly not a "good fit." This was despite that after her first year, when many teachers had been polled about what had gone right that year, one of the responses was that Ms. Fraize had gone well that year.

56. Directly thereafter, Ms. Fraize's blood pressure rose and she had it checked by the school nurse. Apparently, the school nurse reported to someone that Ms. Fraize's blood pressure was high as others knew.

57. On April 26, 2016 Defendant made a proposal for Ms. Fraize to resign and attempted to restrict who she could get a reference from.

58. Defendant created a hostile environment based on perceived and actual disabilities, as well as her actions in support of the students and her program, which no reasonable person would be expected to endure.

59. Defendant's discrimination and harassment of Ms. Fraize has caused her damages, including but not limited to emotional distress, lost wages and benefits, anxiety, fear, loss of sleep and other ongoing physical and emotional symptoms.

60. Ms. Fraize claims all damages allowed to her by law, including but not limited to liberal/enhanced compensatory, punitive damages, lost wages and benefits (past and future), loss of retirement, damages for distress, embarrassment, humiliation, aggravation, emotional distress, attorney's fees, costs, all pre-judgment and post-judgement interest, and an amount to compensate for any negative tax consequences that result from any judgment or decision.

61. Ms. Fraize also requests all equitable relief to which she may be entitled including but not limited to reinstatement, training for Defendant's employees, and an apology.

**COUNT I**
**DISCRIMINATION INCLUDING TERMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA and ADAAA)**

62. The paragraphs stated elsewhere in this complaint are incorporated herein by reference as if fully set forth herein.

63. Defendant violated the ADA, as amended, by terminating Ms. Fraize, who could and did perform all the essential functions of her job, with or without reasonable accommodations, and who had no medical restrictions or limitations affecting her ability to

work, because they regarded her as disabled, and/or discriminated against her on the basis of her disabilities, all in violation of the ADA, 42 U.S.C. § 12112(a).

64. The effect of the employment practices complained of has been to deprive Ms. Fraize of equal employment opportunities and otherwise to adversely affect her status as an employee because of her disability, record of disability or being regarded as disabled.

65. The unlawful employment practices complained of were intentionally done with malice and/or reckless indifference to the federally protected rights of Ms. Fraize and have deprived Ms. Fraize of equal employment opportunities and otherwise adversely affected her status as an employee, including that she was discharged.

66. Due to the allegations herein and violation of the ADA by Defendant, Ms. Fraize has suffered damages and claims all damages and equitable relief to which she is entitled under the law, and as enumerated elsewhere herein.

## COUNT II
## DISCRIMINATION INCLUDING TERMINATION IN VIOLATION OF NEW HAMPSHIRE'S LAW AGAINST DISCRIMINATION, RSA 354-A, et. seq.

67. The paragraphs stated elsewhere in this complaint are incorporated herein by reference as if fully set forth herein.

68. The above described actions also violated NH RSA 354-A, et. seq.

69. Due to the allegations herein and violation of 354-A, *et. seq.,* by Defendant, Ms. Fraize has suffered damages and claims all damages and equitable relief to which she is entitled under the law, and as enumerated elsewhere herein.

## COUNT III
## AMERICANS WITH DISABILITY ACT (ADA) and ADAAA
## DISABILITY DISCRIMINATION / HOSTILE WORK ENVIRONMENT

70. The paragraphs stated elsewhere in this complaint are incorporated herein by

reference as if fully set forth herein.

71. Defendant harassed Ms. Fraize and subjected her to a hostile environment based upon her disability, record of having a disability and/or regarding her as having a disability.

72. Ms. Fraize was subjected to severe or pervasive discrimination/ harassment, which no reasonable person should be expected to endure, and which altered the conditions and privileges of her employment, including that she was discharged.

73. Due to the allegations herein and violation of the ADA by Defendant, Ms. Fraize has suffered damages and claims all damages and equitable relief to which she is entitled under the law, and as enumerated elsewhere herein.

### COUNT IV
### DISABILITY DISCRIMINATION / HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW HAMPSHIRE'S LAW AGAINST DISCRIMINATION, NH RSA 354-A, et. seq.

74. The paragraphs stated elsewhere in this complaint are incorporated herein by reference as if fully set forth herein.

75. Defendant harassed Ms. Fraize and subjected her to a hostile environment based upon her disability status as described elsewhere herein.

76. Ms. Fraize was subjected to severe or pervasive harassment, contrary to NH RSA 354-A, et. seq., which altered the conditions and privileges of her employment, including that she was discharged.

77. Due to the allegations herein and violation of 354-A, et seq. by Defendant, Ms. Fraize has suffered damages and claims all damages and equitable relief to which she is entitled under the law, and as enumerated elsewhere herein.

## COUNT V
## WRONGFUL DISCHARGE

78. The paragraphs stated elsewhere in this complaint are incorporated herein by reference as if fully set forth herein.

79. Plaintiff took steps in performing her job, and making complaints about mistreatment of herself and students, as well as the failure to follow state and federal laws, rules and regulations. These complaints, and the steps Plaintiff took, are all actions which public policy supports.

80. As described above, in retaliation therefore, Defendant harassed and retaliated against Ms. Fraize, including suspending her administratively, writing her up, otherwise harassing her and then firing her. Ms. Fraize was wrongfully discharged.

81. Due to said wrongful discharge, Ms. Fraize has suffered damages, and claims all damages and equitable relief to which she is entitled under the law, and as enumerated elsewhere herein.

## COUNT VI
## FREEDOM OF EXPRESSION
## RSA 98-E, ET. SEQ.

82. The paragraphs stated elsewhere in this complaint are incorporated herein by reference as if fully set forth herein.

83. Plaintiff took steps in performing her job, and making complaints about mistreatment of herself and students, as well as the failure to follow state and federal laws, rules and regulations.

84. Plaintiff criticized superiors and co-workers, as well as followed the student's IEP's and other educational plans, in order to protect the students and foster their educational goals, as well as to follow the laws, rules and regulations.

85. The actions of which Ms. Fraize complains, as described above, are in retaliation for her complaining to supervisors and others and speaking up about what she believed was in the best interest of students and following the laws, rules and regulations. therefore, Defendant harassed and retaliated against Ms. Fraize, including suspending her administratively, writing her up, otherwise harassing her and then firing her.

86. Ms. Fraize had a right to full criticism and disclosure to her employer, concerning her employment, the education of its students, their rights, and following the laws, rules and regulations, particularly as to IEP's.

87. State law encourages employees to speak up about issues of public policy and have a full right to publicly discuss and give opinions, including to supervisors and other officials, as an individual on all matters concerning any government entity and its policies, and prevents any person from interfering therewith. See NH RSA 98:E-1, et seq., Freedom of Expression

88. Defendant's behavior described herein, constitutes interference with Ms. Fraize's rights to freedom of expression and to fully criticize and/or disclose information on matters of public concern, as described herein, all in violation of NH RSA 93:E-1, et seq.

89. As a result of Defendants' violation of Ms. Fraize's right to Freedom of Expression as set forth in RSA 98-E, et. seq., Ms. Fraize has suffered damages.

90. Plaintiff claims damages which are within the jurisdictional limits of this Court and as described elsewhere herein. Plaintiff claims all damages as allowed by law, as well as all equitable relief to which she may be entitled.

**WHEREFORE, the Plaintiff, Ms. Fraize respectfully requests the following relief:**

A. Compensatory damages for lost wages including recovery of back pay and front pay, lost benefits, loss of retirement, loss of future earning capacity, for other economic loss and all other damages as stated herein and/or as allowed by law;

B. Compensation for emotional pain, suffering, mental anguish, inconvenience, loss of enjoyment of life;

C. Liberal/enhanced compensatory damages for violation of RSA 354-A, et. seq., including but not limited for her emotional distress, embarrassment, humiliation, aggravation, and damage to reputation;

D. Punitive damages under the ADA/ADAAA;

E. Appropriate pre- and post-judgment interest from the date of Plaintiff's charge filed with the New Hampshire Commission for Human Rights;

F. Additional money to offset any negative tax consequences due to the timing of payment of any judgment;

G. Costs and reasonable attorney's fees for representation in the New Hampshire Commission for Human Rights and in this Court;

H. Reinstatement; and

I.      For such other and further relief as the Court deems just and proper.

                Respectfully submitted,
                **Kathleen Fraize, Plaintiff**
                By her attorney

Dated: January 2, 2019      By:      /s/ Leslie H. Johnson
                Leslie H. Johnson, Esquire - NHBA #5545
                Law Office of Leslie H. Johnson, PLLC
                PO Box 265
                Center Sandwich, NH 03227
                603.284.6600
                leslie@lesliejohnsonlaw.com